# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO.1:13CR561** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **JUSTIN KRUEGER,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

**CHRISTOPHER A. BOYKO, J:**

This case came before the Court for a Competency Hearing on October 18, 2016. The hearing was not completed and was re-scheduled to November 30, 2016, on which date, the Court concluded testimony. Another hearing was scheduled pursuant to a request for a second opinion for May, 17, 2017, which completed the expert testimony regarding Defendant's competency.

## I. FACTUAL AND PROCEDURAL HISTORY

Justin M. Krueger ("Defendant") was charged with two counts of Threat to Another by Interstate Communication. On April 15, 2014, he pled guilty to both counts. Defendant was sentenced to thirty-six months on each count, to run concurrently. Defendant appealed the decision on the basis of a change in the law. The District Court's decision was vacated and remanded for a new trial under the new guidelines on July 30, 2015. Following a motion by the Government, the Court initiated an inquiry into Defendant's competency to stand trial.

Defendant was referred to Dr. Rebecca Barnette, a forensic psychologist working at FCI

Butner, North Carolina. Defendant arrived at Butner on May 17, 2016, and was evaluated until July 30, 2016. Dr. Barnette produced a written report on August 16, 2016. Dr. Barnette, in both her report and testimony, concluded that Defendant suffers from Antisocial Personality Disorder and Delusional Disorder. During the November 30, 2016 hearing, Defendant requested a second opinion. On January 10, 2017, the Court ordered a second competency evaluation by a psychologist. Defendant was evaluated by psychologist Dr. Arcangela Wood on February 7, 10, and 17, 2017. Dr. Wood came to the same conclusion, that Defendant suffered from Antisocial Personality Disorder and Delusional Disorder.

Defendant has an extensive history of mental illness. More recently, while serving his conviction, he allegedly beat a cell mate with a "lock in a sock," made statements regarding his ability to predict the future and became paranoid that his first attorney was clandestinely recording conversations (which ultimately led to him discharging his attorney and attempting to represent himself). The October 18, 2016 hearing was forced to end by Defendant's conduct in Court.[1]

According to Court-ordered medical reports, foremost among Defendant's delusions is the belief that his adoptive parents physically and sexually abused him, despite no reports of abuse by any of the multiple doctors or social agencies who were in contact with him during that time. This includes one instance where Defendant believes he was sexually molested by his adoptive mother in the office and in front of a psychiatrist during a session. Defendant also

---

[1] During Dr. Barnette's testimony that Defendant was deluded in believing he was one of the top five pornography stars in the U.S., Defendant became disruptive to the point that the Court ended the hearing. Defendant was combative and hurled obscenities at U.S. Marshalls as he was escorted out.

expressed the belief that his adoptive parents were part of a conspiracy to force upon Defendant and his brother medications designed to simulate his various mental disease diagnoses. On November 8, 2016, Defendant sent a letter to the Court asking that the Court appoint a forensic psychiatrist to investigate his claims and should that psychiatrist corroborate his allegations, that the Court then "dispose of the case." Both Dr. Barnette and Dr. Wood opined that Defendant is convinced he is not on trial, but rather his claims of abuse are. Both psychologists concluded that Defendant's purpose is to vindicate his delusions and they came to the conclusion that Defendant is not competent, regardless of Defendant's desire to represent himself.[2] Defendant further argues that his counsel will be a filter for his outbursts and that the Court is the filter for the veracity of evidence. Assuming this is true, it does not detract from the fact that due to his delusions, Defendant will not be able to make crucial decisions without his delusional beliefs interfering in that process. As both psychologists pointed out, due to his fixation on the belief that his adoptive parents abused him, he will not ever consider a plea agreement and that any testimony will be compromised by his mental illness. Defendant argues that this is no different than embellishments or lies told by any other defendant. In doing so, Defendant's argument unfortunately ignores a fundamental truth. When a person lies, they are aware that what they are saying is false. According to both psychologists, when a person with Delusional Disorder holds on to a delusion, they are not aware - nor can they ever be aware - that what they say is false.

This issue of choice or free will is paramount to analyzing the Defendant's competence to assist in his own defense. To that end, when taken in tandem with the fact that Defendant's delusion relates specifically to the charges themselves, there are three reasons why Defendant's

---

[2]Defendant withdrew his request to represent himself during competency hearings.

delusions renders him incompetent to stand trial. First, Defendant lacks the ability to make decisions on the basis of his "informed free will." *Faretta v. California*, 422 U.S. 806, 835 (1975). A lie or embellishment is made with the knowledge that it is false. It is a *decision*, one that comes with foreseeable consequences. A delusion, on the other hand, necessarily means that Defendant's decision making process will be irrevocably altered by his mental illness. Second, Defendant's testimony would be substantially altered by his delusions. Defendant's delusions are not a matter of perspective, but rather a result of his mental illness itself. Therefore, Defendant's testimony would be in constant danger of becoming prejudiced or self-incriminating solely on the basis of his mental illness. Third, according to the psychologists, Defendant's beliefs will almost certainly never change despite all evidence to the contrary. This may be distinguished with a similar situation in *Dubrule*, where the defendant also suffered from delusions but was ruled competent. *Dubrule*, 822 F.3d at 874. In *Druble*, the defendant was interviewed by multiple psychologists who had conflicting recommendations for competency. *Id.* Additionally, when the defendant in *Druble* was confronted with conflicting information he "would often back away from his apparently delusional claims." *Id*. Here, there is no conflict among the psychologists' recommendation. Furthermore, unlike the defendant in *Druble,* Defendant shows no ability to appropriately alter his decisions when confronted with new information. Thus, the Court cannot conclude that Defendant's decisions are competent or made of his own free will pursuant to the Fifth, Sixth and Fourteenth Amendments, as well as 18 U.S.C. § 4241. Consequently, to put him on trial would be in violation of Defendant's Constitutional and substantive rights.

## III. CONCLUSION

For the forgoing reasons, the Court finds by a preponderance of the evidence that the Defendant lacks the ability to assist in his own defense and therefore the Defendant should be committed to the custody of the Attorney General until such time that Defendant is competent to proceed to trial.

The Court therefore commits the defendant to the custody of the Attorney General. pursuant to 18 U.S.C. §4241(d). The Attorney General shall hospitalize the defendant for treatment in a suitable facility—

(1) for a reasonable period of time, not to exceed four months as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and

(2) for an additional reasonable period of time until his mental condition is so improved that trial may proceed, if the Court finds that there is a substantial probability that with such additional period of time he will attain the capacity to permit the proceedings to go forward.

**IT IS SO ORDERED.**

                                             s/ Christopher A. Boyko
                                             **CHRISTOPHER A. BOYKO**
                                             **United States District Judge**

**Dated: May 31, 2017**